NORTHCUTT, Judge.
Charles Perry, the personal representative of the estate of his mother, Winifred Mefford, sued John Knox Village of Tampa Bay, Inc., and the other named appellants (collectively referred to as John Knox), seeking damages stemming from allegedly improper care his mother received while living at John Knox Village Medical Center. John Knox sought to dismiss the complaint on the ground that Ms. Mefford had waived her right to litigate issues in court by signing an arbitration agreement when she was admitted to the facility. The circuit court denied the motion, whereupon John Knox filed this nonfinal appeal challenging that decision.[1] See Fla. R.App. P. 9.130(a)(8)(C)(iv). We reverse and remand for further proceedings.
The question posed at the hearing on John Knox’s motion was whether there was a valid agreement to arbitrate. See ManorCare Health Servs., Inc. v. Stiehl, 22 So.3d 96, 99 (Fla. 2d DCA 2009) (stating that when determining whether to permit arbitration, the court must decide the gateway issue of whether a valid agreement to arbitrate exists), review dismissed, No. SC09-1625, 2012 WL 1995006 (Fla. May 30, 2012). The circuit court found that there was no valid arbitration agreement because Ms. Mefford was not competent when she signed the documents that included the arbitration clause. It also held that the agreement was procedurally unconscionable because John Knox did not take extra steps to insure that Ms. Mefford understood the agreement when it knew or should have known that she did not. Both rulings were undermined by a dearth of proof that Ms. Mefford was incompetent when she signed the agreement.
The validity of an arbitration clause is an issue of state contract law, and a clause can be invalidated on the same grounds as any contract. Shotts v. OP Winter Haven, Inc., 86 So.3d 456 (Fla. *717 2011). One tenet of contract law that is particularly applicable here holds that a person is presumed to be competent when she enters into a contract. The burden of overcoming this presumption rests on the party who challenges the validity of the contract. Travis v. Travis, 81 Fla. 309, 87 So. 762, 765 (1921). Incompetence is not shown by evidence of simple feebleness or mental weakness. The challenging party must prove that the mental or physical weakness amounted to an inability to comprehend the effect and nature of the transaction. Dukes v. Dukes, 346 So.2d 544, 546 (Fla. 1st DCA 1976) (Boyer, C.J., concurring specially).
An instructive example may be found in Gilmore v. Life Care Centers of America, No. 2:10-cv-99-FtM-29DNF, 2010 WL 3944653 (M.D.Fla. Oct. 7, 2010) (unpublished decision), aff'd, 448 Fed.Appx. 909 (11th Cir.2011) (unpublished decision), where a relative’s testimony about a nursing home patient’s condition was sufficient to rebut the presumption of competency. Ms. Gilmore had been diagnosed with Alzheimer’s type dementia and delusions, and she was on antipsychotic medication for atypical psychosis. Her son had been given her power of attorney when his mother’s physician determined that she was unable to make her own health care decisions. At the hearing on the validity of an arbitration agreement Ms. Gilmore had signed when she was admitted to the nursing facility, Mr. Gilmore testified that his mother vacillated in and out of lucidity, had no ability to understand complex issues, and was hallucinating. 2010 WL 3944653 at *l-*2.
The federal district court applied Florida law and, based on the son’s testimony and the medical records filed, determined that Ms. Gilmore lacked the mental capacity to enter into a contract because she was unable to comprehend the effect and nature of the transaction. The court relied on her age, physical ailments, history of dementia, confusion and disorientation, and her consistent use of antipsychotic medication. Id. at *3-*4.
In contrast, in this case the Estate did not present any live testimony, lay or expert, from a relative or from a medical professional. The Estate offered no proof that Ms. Mefford had been declared incapacitated by a physician. No one suggested that she had been diagnosed with dementia or psychosis. The Estate’s only evidence that possibly bore on Ms. Mef-ford’s capacity at the time she signed the admission documents was a packet of her medical records. Some of the records seemed to indicate that she was confused on some occasions but not on others. However, many of the records were impossible to read and contained shorthand notations made sometime prior to Ms. Mef-ford’s admission to John Knox Village. The Estate produced no witnesses, expert or otherwise, who might have deciphered the records or explained what they showed with regard to Ms. Mefford’s competency to enter into a contract at the time she was admitted to the facility. Moreover, sometime prior to her admission, Ms. Mefford had executed a power of attorney that would become effective only upon a determination that she was incapacitated. The Estate conceded in discovery that at the time Ms. Mefford entered John Knox Village she was making her own health care decisions.
In support of its motion to dismiss, John Knox submitted the deposition testimony of the employee who handled Ms. Mef-ford’s admission to the facility. The employee did not have an independent recollection of her meeting with Ms. Mefford, but she described her standard practice when completing admissions paperwork, including arbitration agreements. Her practice was to fully explain the entire *718 agreement, including the arbitration agreement and the resident’s right to rescind it within thirty days. If she became concerned that a new resident could not understand the terms of the admissions agreement, she would seek out a doctor, nurse, or family member to assist the resident. If a new resident seemed confused, she would take steps to determine if someone held a power of attorney for the resident. Under her standard practice, the employee would not allow a resident to sign the admissions paperwork if she thought the resident seemed unable to understand it. In discovery, the Estate admitted that a signature on an executed admissions agreement appeared to be Ms. Mefford’s.
The upshot is that the Estate fell far short of its burden to overcome the presumption that Ms. Mefford was competent to enter into the arbitration agreement. Even if, as some of the medical records suggested, Ms. Mefford was sometimes confused, the Estate presented no evidence that she was confused at the time she signed the admissions paperwork that included the arbitration agreement.
From the record before us it does not appear that either the Estate or John Knox specifically asked to present testimony on the competency issue. Still we have held that where “the facts relating to the elements the trial court is required to consider in determining a motion to compel arbitration are disputed, the trial court is required to hold an evidentiary hearing in order to resolve the matter.” FL-Carrollwood Care Ctr., LLC v. Estate of Gordon ex rel. Gordon, 34 So.3d 804, 806 (Fla. 2d DCA 2010) (quoting Tandem Health Care of St. Petersburg, Inc. v. Whitney, 897 So.2d 531, 533 (Fla. 2d DCA 2005)). Although these facts are somewhat different from those set out in Estate of Gordon, we find that an actual evidentiary hearing should have been held on the issue of Ms. Mefford’s competency. We reverse the circuit court’s finding that Ms. Mefford did not have the mental capacity to enter into a valid arbitration agreement, and we remand to permit the court to conduct an evidentiary hearing on this issue.
As mentioned, the circuit court also found that the arbitration agreement was procedurally unconscionable because Ms. Mefford was confused and the John Knox facility did not insure that she was able to understand the agreement she was signing. Procedural unconscionability relates to the way a contract is made, and it addresses such issues as the bargaining power of the parties and their ability to understand the terms of the contract. Bland ex rel. Coker v. Health Care & Retirement Corp. of Am., 927 So.2d 252, 256 (Fla. 2d DCA 2006), abrogated on other grounds by Shotts, 86 So.3d 456. Thus, if the Estate had proved that Ms. Mef-ford’s mental state was such that she could not understand the arbitration agreement, that fact could support a finding of procedural unconscionability. But, as we have held above, the Estate’s evidence was insufficient.
Moreover, under the law of this district an arbitration agreement may be avoided for unconscionability only when it is both procedurally and substantively unconscionable. Tampa HCP, LLC v. Bachor, 72 So.3d 323, 326 (Fla. 2d DCA 2011). A contract is substantively unconscionable only if its terms are so outrageously unfair that they shock the judicial conscience. Bland, 927 So.2d at 256. Here, the circuit court did not find that the agreement was substantively unconscionable. Thus, the circuit court’s holding that the arbitration agreement was unconscionable was unsupported by either the evidence or the law.
*719 For the reasons described, we reverse the order under review and remand for further proceedings.
Reversed and remanded.
SILBERMAN, C.J., and MORRIS, J., Concur.

. John Knox raised other grounds in its motion to dismiss, but the court did not rule on those grounds; it only considered the arbitration issue.